I'd like to try to reserve some of my time for rebuttal. This may be the only case, and certainly there's no reported case of which we're aware, in which a defendant has completed the Form 4473 entirely honestly and also objectively accurately, but nevertheless been prosecuted. The Form 4473 exists precisely to draw a line between legal conduct and non-legal conduct. That's why it exists. It says on its face, and it gives explicit instructions to buyers and sellers, how to determine whether or not a firearm transaction is legal or not. And it puts a series of questions to purchasers of firearms, the express purpose of which is to determine whether they fall within any of the explicit categories set forth in Section 922 that say a person is prohibited. Mr. Batterjee was not only honest when he filled out the form. All the answers that he gave were entirely correct, yet he's been prosecuted. The government's approach in this appeal appears to be that so long as one can imagine a hypothetical sense in which official misleading could have been more specific that the defense of entrapment by estoppel is foreclosed, that's not the law. There's little dispute in this case that Mr. Batterjee was led to believe, both by the form and by the store employees, the Federal Firearms Licensees, that a legal alien could purchase a firearm by showing 90-day residency in the state in which the firearm was transferred. What the government says is, well, there was a factual dispute at trial whether Mr. Batterjee was further misled that a person in his legal alien subcategory, a person on a work visa or a nonimmigrant alien, could lawfully purchase a firearm. And what the government is saying is that that fact disputed trial dooms the defense of entrapment by estoppel on appeal. I think the government is asking the wrong question. Mr. Batterjee was, and it appears undisputed on this record, misled that a person of his discrete legal status, a legal alien, a category of which he understood and everybody understood he was a member, could lawfully purchase a firearm. All the government is saying is that he wasn't further misled that his subclass could also purchase a firearm. Mr. Batterjee's argument is it made no difference in terms of the information he was given and the information requested from him as to whether or not he was H1 or anything else. So long as he was a legal alien, that was it. Exactly. And the form draws a distinction. The form mentions two types of aliens, legal, illegal. Illegal may not purchase firearms. Legal may if they can establish criteria that Mr. Batterjee plainly established. The firearms licensees gave him the same information. They told him you need a lease or utility bill and the transaction can be completed. He left the store, got his lease and utility bill, came back. They said he could complete the transaction. And then, interestingly, in the form 4473, the transferor, the Federal Firearms Licensee, signs the following certification. It is my belief that it is not unlawful for me to sell, deliver, transport or otherwise dispose of the firearm to the person described above. The government says that there's a lack of affirmative statements in this case that suggest that it was legal for Mr. Batterjee to purchase the firearm. I think that is an express statement and there are many others in the record. The Court heard a lot about the INS Form 294 and the prior argument. The government relies heavily on the same case, the Ramirez-Valencia case. It's important, I think, to note that it was crucial to the Court's ruling in Ramirez-Valencia that in addition to the sentence that allegedly misled the defendant, there was another sentence in the form that told the form, the immigration form, that told the defendant you must contact the consulate before you try to reenter. And what the Court said, one of the things the Court said is that it appears that the defendant did not comply with that sentence and that affected the Court's decision on whether he could rely on entrapment by estoppel. There is no explicit requirement conditioning the ability of legal aliens to purchase firearms in this form, the Form 4473, that the government can point to and say, well, he didn't comply with that form. And in addition, I think the forms are quite different in purpose. As I mentioned, the Form 4473 is designed on its face to draw that line between lawful purchases and unlawful purchases. I'd like to address one argument that the government made in its brief that it didn't argue below. That is that it says that the Court has to look at the ammunition charge separately from the firearm charge. There is little dispute on this record, I think there's no serious dispute on this record, that the ammunition that Mr. Batterjee had was for this target pistol, the target pistol about which he was officially misled. The ammunition was a component of the target pistol about which he was misled. And the ATF presumably understands that people don't have a need for ammunition if they haven't – if they don't have a firearm. And purchasers like Mr. Batterjee will purchase ammunition after they've been given the form, the form about which he was misled. And in this case, there's no dispute about what the ammunition was purchased afterwards? It appears to be clear from the record. There are – there are seven rounds of ammunition for which the government didn't offer any evidence about when they had or hadn't been purchased. What we do know, though, is that the store employees testified that it was the kind that they sell at the shop and that Mr. Batterjee had not purchased anything. He'd only been browsing before he purchased the firearm. And there's nothing in the record that the government has put in that says he's purchased it before? There is not. Okay. Not that I'm aware. I think the government's argument about the ammunition would be a little bit like it's saying. It could mislead somebody into believing they could lawfully possess an automobile but then turn around and, consistent with due process, prosecute them for possession of the gasoline. I think it's important to remember that the entrapment by estoppel defense is a due process defense. And I don't think that that would be a fair reading of the cases. We respectfully submit that if this defense is to exist, it is a little bit difficult to imagine a more compelling case for its application, and unless the Court has further questions. No. You've got some time for rebuttal then. Thank you. Thank you. May it please the Court, counsel. Good morning. My name is Howard Skenick. I represent the government. One of the things I think this Court needs to look at, though, is Mr. Baderge's history with guns and ammunition, because it's very important when it comes down to analyzing his reliance on the Federal Firearms Licensees and the conversations that happened there and the Form 4473, which the government submits to the record is very thin on any reliance that Mr. Baderge put on that particular form. Mr. Baderge possessed firearms and ammunitions numerous times before he initiated the purpose. Now, the harms are distinct. It goes to possession and it doesn't go to purchase, and that's the law. Mr. Baderge never bothered during the time that he used guns and ammunition to determine the legality of those actions. Now, you're prosecuting him for the purchase and possession of this firearm, correct? That's correct, Your Honor. Are you prosecuting him for possession of any other firearms? No, Your Honor. So why are we hearing this? I'm not sure I don't want to hear it, but I want to know why I'm hearing it. Absolutely, because it goes to his reliance. When you get him in the gunshot, it goes to what did he rely on. And as the analysis in Talmadge and Bresner talk about, there has to be a reasonable reliance upon misleading information. You've got an individual that is so predisposed to doing this that it can be argued and argued based on the record at trial that was established that he placed very little reliance on what occurred there. Mr. Baderge wanted the gun and he wanted the ammunition. So are you arguing that if we're persuaded there was official misleading, affirmative statement, that it was lawful for him to purchase, that can be overcome by what you've just argued, that he couldn't have relied on it? I disagree with the inference that there was official misleading, but... I'm asking you, it seems to me that's what you're arguing. I understand that, Judge. You're saying, well, he couldn't, it doesn't matter whether he was told that, it's whether he relied on it and he couldn't have relied on it. Isn't that your argument? And that is part of the analysis laid out in Bresner and Talmadge. There has to be reasonable reliance, even if there is misleading information from the government official or, in this case, both the government official and the form as alleged by Mr. Baderge. There has to be reasonable reliance on the part of the individual. And if we go to that very narrow point, if there is, if this Court is inclined to believe that there was some misleading information given or... I think you're trying to say to me, he really wanted guns. And we know he really liked guns. And he liked guns so much that even if he had been told that he couldn't have it, he would have got it anyway. Is that what you're telling me? And therefore, there's no reliance. That's partially true, Judge. There's no doubt that what happened inside the gun store was the blind leading the blind. But to get... And one of the blind people is a gun store employee who's an authorized agent of the United States government. And that's what this Court decided, yes. Uh-huh, yeah. But what Mr. Baderge failed to do, what Mr. Baderge failed to do was first, he had an obligation to give these gun dealers accurate information. Which he did. Which he did not do. Well, what information did he give them that was inaccurate? He never told them his specific subclasses. No, I didn't ask that question, and that was not what you originally said. You said he gave them inaccurate information, and I asked you what inaccurate information did he give them. And you proceeded to tell me what he didn't give them. Nothing affirmatively, Your Honor. But he did not give the gun dealers the information. He did not give them the information. What information? That he was a non-immigrant alien. And did the form ask for that information? No, it didn't. Did the employee ask for that information? No, he didn't. Oh, okay. Can I ask you a different question? Yes, Your Honor. Why are you prosecuting this man? Because Mr. Baderge illegally possessed the firearm and the ammunition. That's not really my question. My question is, there are a lot of people out there who are doing things that violate the law. You chose to prosecute this man. Why? Your Honor, the factual history of this case is very distinct and not very flattering to Mr. Baderge. It started on September 11th when Mr. Baderge ran through his workplace, exalting the fact that several Americans, many Americans died because the Twin Towers had been destroyed. That led to people at his workplace calling the FBI. There was an investigation done of Mr. Baderge. Mr. Baderge, people surrounding Mr. Baderge were looked at, and it was found out that Mr. Baderge had a gun. At that point, it was determined that he possessed the gun illegally, and the government took action. And from that, the prosecution generated. Okay. And is this information about his running around in the workplace in the fashion you're describing in the record before us? It's in the record at the suppression hearing on September 17th before the district court. Okay. Yes, Your Honor. Your Honor, one of the things that you have to look at also, both of you, is, and we'll go to reliance because I think that's the key issue here. Mr. Baderge showed a great deal of interest in the record supports us in researching and purchasing a custom weapon. He initiated the transaction. He carefully chose a custom pistol, and he stated that he liked fine things. He engaged in comparison shopping to get the best price. He ordered and paid for the firearm two to three weeks before he ever engaged in filling out the Form 4473. But in contrast, now, Mr. Baderge in the record does state this. He had an immigration lawyer. He had other sources. He showed no interest in finding out what the legality of the purchase would be other than his statement that he went to this gun dealer and got this particular information. And in contrast, it seems a little unbalanced. He showed all of this interest about getting this particular gun and no interest at all in figuring out if he did the right thing. Another thing, Your Honor, that counsel talked about, and I want to address this, is the ammunition. The possession of the ammunition is a separate and distinct harm and separate from Mr. Baderge's argument about the Form 4473 or any conversations with the Federal firearms licensees. The record does support that the ammunition was purchased on another occasion. So there was intervening time. What's that mean? The record does support and another occasion? There was a witness that testified that identified the ammunition. I think it was Federal firearms licensee Bill Rozakis. He identified the ammunition, almost all of the ammunition. There were seven rounds that he could not identify as being purchased from his place of employment, his store, on a different occasion. And that's the words he used, on a different occasion. He couldn't give a precise date, but he gave the words on a different occasion other than the date that the firearm was transferred to Mr. Baderge. And so we don't know from that testimony whether it was purchased before or after? No, Your Honor. And do we know if this information is specific to this gun? Yes. All the ammunition that was found was specific to that gun. And do we know how unusual this gun is with respect to its ammunition requirements? That is to say, is it possible or likely that he would have bought this ammunition for another gun he had? Do we know that? No, Your Honor. The only gun that the government knew that Mr. Baderge had was the target pistol. And do we know if this is unusual ammunition? No, it's not unusual ammunition. The only thing that could be said about the Remington ammunition, the one that was purchased from Shooting Star, is that Shooting Star, the Federal firearms licensee, was one of the very few places in the area that sold that type of ammunition. And that's why they were able to identify it. Yeah, but I think my question might not be clear, but the answer may come back the same. That is to say, we don't know. What I'm asking is, does this gun have particular ammunition needs that are unusual by comparison to other guns? No, Your Honor. The pistol is unique. The ammunition is not. Okay. But it is a separate and distinct harm. Now, the other thing that the government wanted to talk about just briefly, I know I have a minute, is the defendant's argument in their briefs that the government has conflated the entrapment argument and the entrapment by estoppel argument. And this is a – it seems to be a matter of first impression in this circuit as to the, you know, the overall distinctions between the two harms, the two laws. But the one thing that I do want to bring up is that in the district court, the defendant himself argued that entrapment by estoppel was a species of entrapment and, in fact, got the district court to agree and, therefore, in the government's opinion, impermissibly shifted the burden of proof to the government to rebut the affirmative defense. And that's what the district court finally held the government to, was the burden beyond – to prove beyond a reasonable doubt that the affirmative defense of entrapment by estoppel did not exist. We believe that the doctrines do overlap, and if this Court does not agree with that, we would ask this Court to look at the predisposition on the part of Mr. Batterji and understand that it goes to reliance and his lack thereof. If there are no further questions, thank you. Thank you. Well, in the government's answering brief, we heard for the first time about this dead baby photograph allegation that had not been – had not come up at trial or in the argument on the new trial. Now we hear that Mr. Batterji was happy about September 11th, which is not something that I can point to anything in the record to defend him because it wasn't something that came up during trial or at the – in the proceedings on the new trial. Is there anything to that effect in the record actually in front of us? There may have been something in the affidavit in support of or in opposition to the motion to suppress as to why the FBI originally became involved with Mr. Batterji. Okay. I have to say, for the benefit of both sides, I was asking that question out of curiosity. I'm not sure if it's legal relevance. Yeah. I would add, though, that Mr. Batterji, we do know, has been in this country for 12 years with no legal problems, has a degree from Arizona State University, has been gainfully employed, is married to a United States citizen, has never had any problem with the law before this, and he's certainly not charged with any other kinds of offenses. With respect to reliance, there is considerable evidence in the record regarding reliance. Mr. Batterji did not go to any of the places that one can go in the United States to get a firearm and avoid the Form 4473. He didn't go to a gun show. He didn't take – use the classifieds. He didn't buy one of the dozens of magazines that have pages and pages on how people can obtain firearms. The evidence is that he went to the Shooting Stars store because he knew about the Form 4473, and he knew that the form drew a line between permissible transactions and illegal transactions. That was his purpose for going to the store. Also, the Federal firearms licensees testified that they relied on the form and, in so doing, were confused about the law and were confused about the law when they gave instructions to Mr. Batterji. Finally, with respect to the distinction between entrapment by estoppel and entrapment being a matter of first impression in this Court, it isn't. This Court addressed the matter in Talmadge, in footnote 1, and said very clearly that the elements of an entrapment defense are not the elements of entrapment by estoppel defense because the theories are very different. It's footnote 1 of the Talmadge case. Did the district court indicate that the defendant did not rely? I do not. As a basis for its finding that he was guilty. Very difficult to know, Your Honor. I do not believe that it did. It's very difficult to isolate the exact basis for why the district court did it. Your opponent seems to be arguing that both reliance and official misleading are elements of this defense. And although he was reluctant to do so, I think he was almost conceding that there might be a case where you could have official misleading but no reliance, and in that case, the conviction should stand. What's your answer to that? I believe that the defendant, to establish official misleading, must show both that he was misled and that he reasonably and genuinely relied on what the government told him. There is no evidence of lack of reliance on this record. I think that the notion that he went to a shooting range, which may or may not be illegal It's hard for me to believe that it is. But the fact that he went to a shooting range, I do not think in any way suggests that he was not looking to the form and not looking to what the firearms licensees told him to figure out whether or not he could complete the transaction. Again, I go back to his undisputed testimony that he went to the store, he understood what the form's purpose was, and he understood the form would tell him whether or not he could or couldn't purchase the firearm. Okay. Thank you. Thank you very much. Both sides, again, for a useful argument. The case of United States v. Vatterji is now submitted for decision. The next case on this morning's calendar is United States v. Sarbia. Have you talked to other counsel about this chart? I sent them this exhibit about a month ago. Okay. They have no objection. And I will note this exhibit is reproduced in the agenda with the opening brief at page 7. Okay. Hold the phone here while we readjust, and then you can start the, may it please the court, formula. Okay. May it please the court, Jason Carr appearing on behalf of Appellant Sarbia. I intend to reserve some time for rebuttal, if I may. Sure. The district court significantly enhanced the
judges: Hug, Alarcon,w. Fletcher